UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

*Norfolk Division*

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.           )<br>)<br>LUIS ENRIQUE SOTO-FERRO  )<br>)<br>Defendant       ) | Criminal No.: 2:18-cr-85-001 |

GOVERNMENT'S POSITION ON SENTENCING

The United States of America now submits its position with respect to sentencing in accordance with the Order of the Court. ECF No. 153.

SUMMARY

On May 24, 2018, a federal grand jury issued a four-count indictment. The defendant was extradited and paroled into the Court for an initial appearance in Alexandria. ECF No. 103. The defendant made his first appearance in Norfolk on August 23, 2022. ECF No. 110. The defendant pled guilty to Count Two on November 21, 2022. ECF No. 126. The defendant has accepted responsibility and we move for an additional one-point for acceptance under the terms of the plea agreement.

The defendant's adjusted offense level is 39, his criminal history is II, and the adjusted advisory guideline is accordingly 292-365 months. PSR ¶ 65. In addition, the government moves for a 4-level variance from the advisory guideline range, establishing an advisory range of 188-235 months. We recommend a sentence of 188 months.

## THE OFFENSE LEVEL

Paragraphs 19 to 29 of the PSR detail the guideline calculations that are supported by a preponderance of the evidence based on the evidence in the investigation, the agreed statement of facts, and the evidence submitted to probation, as follows:

Base Offense Level (§ 2D1.1) = 38
(*Over 17,000 grams of converted weight*)
Role in the Offense + 4[1]
Acceptance of Responsibility (USSG §3E1.1(a) and (b)  -3
Adjusted Offense and Total Level = 39
*(Advisory Sentence Range – 292-365 months)*

## SENTENCING PROCEDURE

The law from the Supreme Court, the Fourth Circuit, and Congress is clear on sentencing. First the Court determines the applicable guideline range and then it imposes a sentencing using the statutory sentencing factors, and several other factors as provided by law.  Either side under case law is permitted to argue for any sentence it deems appropriate.

## NATURE OF THE OFFENSE

The nature and circumstances of the offense are immensely serious.  This defendant was a leader and manager in an international and multi-state methamphetamine conspiracy that moved kilogram after kilogram of dangerous and highly addictive controlled substances from Mexico into the Hampton Roads area and elsewhere, where it was distributed to local methamphetamine addicts.

The highly pure methamphetamine, made in Mexico, that the defendant was distributing is devastating and plays a role in preventing progress within the Hampton Roads communities.

---

[1] While the defendant clearly qualifies for the 4-level role adjustment under the guidelines, that 4-level adjustment arguably appears to elevate him beyond what is "sufficient but not greater than necessary" considering the 3553(a) factors. Accordingly, we move for a 4-level variance and recommend a sentence of 188 months.

As a result of the conspiracy, the defendant was attributed with an extraordinary amount of methamphetamine–over 17,500 grams of actual methamphetamine. PSR ¶ 13.

Methamphetamine overdoses and deaths are rising, and each year the problem worsens.[2] The new methamphetamine slowly destroys a person from the inside out.  According to the Virginia Department of Health's Chief Medical Examiner, the number of fatal overdose methamphetamine deaths in Virginia has skyrocketed in recent years, from a total of six in 2007 to 198 in 2019 and an estimated 385 in 2020—a year-over-year increase of 94% in the last year alone—and a 6,316% increase since 2007.[3]  That increase has gone hand-in-hand with the increasing prevalence of extremely high-purity methamphetamine sourced from Mexico.

The current P2P Mexican Methamphetamine is so strong, so pure, and so lethal that the human brain cannot handle it.[4]  Even where it is not fatal, methamphetamine, "a highly addictive central nervous system stimulant," does dramatic harm to its users. Its "use is associated with a range of health harms, including psychosis and other mental disorders, cardiovascular and renal dysfunction, infectious disease transmission, and overdose."[5]  Compounding the problem, there are no approved medications effective at treating methamphetamine addiction—there is no

---

[2] CDC: 50-fold increase in methamphetamine deaths in past decade - 2023 - Alcoholism & Drug Abuse Weekly - Wiley Online Library
[3] *See* Virginia Department of Health, Office of the Chief Medical Examiner, Fatal Drug Overdose Quarterly Report, Fourth Quarter 2020, *available at* https://www.vdh.virginia.gov/content/uploads/sites/18/2021/04/Quarterly-Drug-Death-Report-FINAL-Q4-2020.pdf, pages 2 and 24.
[4] 'The deadliest drug we've ever known': author Sam Quinones on how fentanyl saturated the US | Drugs | The Guardian; https://www.theguardian.com/society/2022/jan/22/fentanyl-methamphetamine-drugs-epidemic-us
[5] *See* https://www.cdc.gov/mmwr/volumes/69/wr/mm6912a1.htm; *see generally* Quinones, "The New Meth," The Atlantic, Oct. 18, 2021, *available at* https://www.theatlantic.com/magazine/archive/2021/11/the-new-meth/620174/ (reporting on the increased trafficking of chemically pure methamphetamine and a concomitant rise in severe mental illness and homelessness).

3

methadone equivalent for methamphetamine.[6] As is true for heroin, fentanyl, and a host of other controlled substances, methamphetamine truly is a scourge on society, wreaking havoc in its users' lives, breaking families apart, and taking a severe toll on the public health social safety net.

Here in the Hampton Roads area, high-purity methamphetamine smuggled from Mexico, perfectly illustrated by this case, is a growing problem, and the defendant was a major player in its importation and distribution. He fueled the fire and was responsible for directing, managing, and overseeing the organization's trafficking and money laundering activities. From 2017 to 2018, he helped pump massive amounts of that drug into the local area. These drugs generated profits for him, which he and others then laundered using electronic payment applications, among other means.

Moreover, although the defendant dealt these lethal and highly addictive drugs, he has no history of substance abuse. Indeed, this was not a scenario where the defendant sold methamphetamine to support his own addiction. Instead, this defendant made profits off feeding the addiction of others and ruining families. Additionally, there was no indication that this 47-year-old man planned on stopping had he not been arrested. The nature and circumstances of the offense clearly demonstrate that the government's recommendation is appropriate. He delivered drugs without regard for the individuals in our community or anyone else.

## THE DEFENDANT

As documented, the defendant was convicted of possession of methamphetamine with Intent to Distribute in 2007 and sentenced to 70 months in prison, 60 months of supervised release, and

---

[6] *See* https://www.nih.gov/news-events/nih-research-matters/trends-us-methamphetamine-use-associated-deaths

was deported from the United States. However, this was conviction not a wake-up call for the defendant.

The defendant, 47, was born in Sinaloa, Mexico, on June 3, 1976, to Manual Soto Maya and Guadalupe Ferro Uriarte. Neither of his parents have a history of criminal activity or substance abuse. PSR ¶ 41. He had everything as a child and was raised with an emphasis on education and religion; the family practiced the Catholic faith and attended mass on Sundays. PSR ¶ 43. The defendant has one brother and four sisters, with whom he has a good relationship. PSR ¶ 42. The defendant is married to Maria Del Rosario Jovalera Arce. PSR ¶ 47. He has two children from their union who reside in Mexico, Stephanie Arishbet Soto Jovalera, 25, and Eilen Soto Jovalera, 16, with whom he has a good relationship. *Id.*

The defendant came to the United States in 2002 but lived between the United States and Mexico for three years. PSR ¶ 45. He returned to the United States in October 2006, two months before his arrest for his previous Federal conviction. *Id.* As mentioned, the defendant was deported to Mexico following his release from the BOP. He returned to the United States illegally on April 2, 2016, and was returned to Mexico on July 2, 2016. The defendant was arrested on the instant offense in Mexico and was extradited to the United States for prosecution. The defendant is now subject to removal once again, after completion of any sentence imposed.

The defendant has no history of psychological or psychiatric treatment. PSR ¶ 51. He first tried alcohol at 18 but only drinks on special occasions. PSR ¶ 52. He has no record of substance abuse, and no documented evidence suggests otherwise. *Id.* From 2012 to 2015, he worked full-time as a machine operator with PVC Factory in Mexico, earning up to 2,600 pesos per week. PSR ¶ 56. From 2015 until his arrest, he worked full-time as a title machine operator for International Cartoon in Mexico, earning 3,200 pesos weekly. PSR ¶ 55.

In summary, the defendant has a history of dealing methamphetamine, despite having no addiction to it. In his first federal conviction, he appears to have been a courier; now his conduct has escalated as show in the PSR and the agreed SOFs.

## OTHER FACTORS

Among the other factors a sentencing court is to consider under Section 3553(a), the sentence imposed in this case needs to afford clear deterrence to future criminal conduct and general deterrence for those contemplating similar schemes, to promote respect for the law, and to protect the public from any future crimes he may commit. In addition to the facts of the case and the defendant's personal history and characteristics as related in the PSR, the government also notes that the need for just punishment, the seriousness of the defendant's conduct at the apex of the conspiracy, the need to afford clear deterrence for future criminal conduct, and the need to protect the public from his commission of further crimes are all important factors. Each supports a significant sentence of incarceration, as does the calculated guidelines range of 365 months. Still, the United States submits that these factors would be best addressed by a sentence of 188 months.

The defendant helped run a sophisticated, Sinaloa-based international and multi-state smuggling operation and made significant profits from his crimes, dealing one of the most addictive drugs available in a highly pure form. The need for deterrence, just punishment, and the protection of the public from his further crimes all favor a significant sentence, albeit one below the guidelines range. The government is also cognizant of the need to avoid unwarranted sentencing disparities under 18 U.S.C. § 3553(a)(6). To that end, a sentence of 188 months imprisonment is reasonable in light of the sentences imposed on the defendant's co-conspirators

and his role in the conspiracy.[7] In the government's view, this is likely the *last opportunity* the defendant will have to change course, to choose another road of a law-abiding and productive life.

## CONCLUSION

The government respectfully submits that a sentence of 188 months is sufficient, but not greater than necessary, to fulfill the purposes of Section 3553(a), and asks the Court to impose the same.

Respectfully submitted,

Jessica D. Aber
United States Attorney

By: \_\_\_\_\_/s/_____

Kevin M. Comstock
Assistant United States Attorney
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689

Dennis Sugg
Student Legal Intern
United States Attorney's Office
101 West Main Street, Suite 8000
Norfolk, VA 23510
Telephone: 757-441-6331
Facsimile: 757-441-6689
Dennis.Sugg@usdoj.gov

---

[7] While the defendant clearly qualifies for the 4-level role adjustment under the guidelines, that 4-level adjustment arguably appears to elevate him beyond what is "sufficient but not greater than necessary" considering the 3553(a) factors. Accordingly, we move for a 4-level variance and recommend a sentence of 188 months.
.

CERTIFICATE OF SERVICE

On this 21st of July 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which sends notification to all assigned attorneys. I also emailed a copy to the probation officer.

By: ____/s/_____

Kevin M. Comstock
Assistant United States Attorney
United States Attorney's Office
World Trade Center, Suite 8000
101 W. Main Street
Norfolk, Virginia 23510
Office Number: 757-441-6331
Facsimile Number: 757-441-6689

Dennis Sugg
Student Legal Intern
U.S. Attorney's Office